UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

_____

In re:   Theodore P. Lanois, Jr.,                                   BK No.: 13-13070
         Debtor                                                     Chapter 13
_____

**MEMORANDUM OF DECISION AND ORDER**
**(this relates to Doc. ##39, 44)**

In this Chapter 13 case, secured creditor Bank of America, N.A. ("BOA") objects to the confirmation of Debtor Theodore P. Lanois, Jr.'s proposed Second Amended Chapter 13 plan on the grounds that the Plan's proposed treatment of BOA's mortgage claim does not include payment for continuing private mortgage insurance ("PMI").[1] I conclude that the law does not support BOA's position and the treatment of its claim under the plan is permissible.

**I.    Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (L).

**II.   Agreed Facts**

As directed, the parties filed a statement of agreed facts on August 18, 2014 (the "Statement of Facts"), setting forth those undisputed facts pertinent to the resolution of this issue. *See* Doc. #52.

Mr. Lanois owns and resides in a multi-family dwelling located at 16 Pine Street, Woonsocket, Rhode Island (the "Property"). On December 21, 2005, in connection with a loan transaction pertaining to the Property, Mr. Lanois executed a mortgage and promissory note to

---

[1] Private mortgage insurance has been defined as "[a]n agreement to provide money to the lender if the mortgagor defaults on the mortgage payments." Black's Law Dictionary 924 (10th ed. 2014). The parties have stipulated that "[T]he purpose of private mortgage insurance is to protect a mortgage holder against losses arising to the extent its collateral is insufficient to otherwise protect the mortgage holder from loss." Doc. #52 ¶6.

1

Countrywide Bank, N.A. in the principal amount of $259,250.00. The mortgage and note were assigned to BOA in October of 2011. Subsequently, on August 19, 2013, Mr. Lanois and BOA entered into a loan modification agreement which restated the principal loan balance due as $244,881.03. Paragraph 10 of the mortgage provides that if the lender is required to maintain mortgage insurance, then the borrower is responsible for the payment of mortgage insurance premiums. The loan modification agreement similarly obligates the borrower to pay mortgage insurance premiums if they were required to be paid under the initial loan documents. Additionally, in accordance with an "Escrow Account Review" dated November 27, 2013, Mr. Lanois was required to pay to BOA a monthly escrow sum for real estate taxes, homeowners insurance, and the PMI here in issue. At that time the aggregate amount of the monthly escrow payment was $776.44, consisting of $344.73 for real estate taxes, $321.83 for homeowners insurance, and $109.88 for PMI.

On November 13, 2013, Mr. Lanois filed his petition under Chapter 13 of the Bankruptcy Code.[2] On "Schedule D – Creditors Holding Secured Claims," he listed BOA as the holder of a bifurcated claim: a secured claim in the amount of $244,881.00 secured by a first mortgage against the Property and an unsecured claim in the amount of $163,381.00, based upon his estimated value of the Property as $81,500.00. On "Schedule C – Property Claimed as Exempt," he claimed an exemption for his entire interest in the Property under § 522(d)(1). BOA timely filed a proof of claim listing the amount of its secured claim as $252,781.60, which included $10,766.49 in asserted mortgage arrearage payments. *See* Claim No. 14.

---

[2] Unless expressly stated otherwise, all references to the Bankruptcy Code or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq*., as further amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

After filing two prior plans to which BOA objected, Mr. Lanois filed his Second Amended Chapter 13 Plan on April 29, 2014 (the "Plan"), Doc. #44, now before me for confirmation.[3] Through the Plan, Mr. Lanois seeks to modify (cramdown) BOA's secured claim to $84,000.00, based upon a relatively recent appraisal of the fair market value of the Property, and to pay interest on BOA's secured claim at the rate of four percent per annum. Once again BOA objected to the Plan on the grounds that it (a) undervalued the Property and thus the amount of its secured claim, (b) proposed to pay less than the current prime rate of interest plus two percentage points (5.25%), citing *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), and (c) failed to account for the required monthly escrow payment, including PMI premiums.

At the hearing on confirmation held on June 11, 2014, the parties advised the Court that they had agreed to a valuation of the Property of $84,000.00 and to a four percent annual interest rate to be paid on the secured portion of the claim. The parties also advised that they had resolved their dispute regarding the escrow payments, other than the disputed monthly PMI premiums. Hence, the sole remaining dispute regarding confirmation of the Plan is BOA's contention that it is entitled to be paid monthly PMI premiums going forward under the Plan at whatever the cost of such insurance may be, presumably calculated upon the aggregate amount of its secured and unsecured claims of $252,781.60. Following the hearing, both parties filed supplemental memoranda of law in support of their respective positions on this issue and the Statement of Facts. I took the matter under advisement on August 20, 2014.

---

[3] In the face of such objections, Mr. Lanois had agreed that confirmation of these two prior plans could be denied.

**III.**     **Positions of the Parties**

    **A.**     **Bank of America**

BOA argues that the terms of its mortgage require Mr. Lanois to pay for PMI as part of his monthly payment, and that because Mr. Lanois only qualified for the loan because of the required PMI coverage, that obligation must be honored under the Plan. BOA fails to cite any case law supporting this position. Instead, BOA relies upon the Homeowners Protection Act of 1998,[4] 12 U.S.C. § 49 *et seq*. This Act regulates PMI and its cancellation in residential mortgage transactions closed on and after July 29, 1999, or any refinancing of such mortgages after that date.[5] Contained within this statute are several enumerated scenarios under which a mortgagor is entitled to have the PMI coverage terminated. Apparently, none of these scenarios apply to Mr. Lanois's circumstances. Thus, BOA asserts, PMI coverage is analogous to homeowner's insurance and in the absence of the statutory right to cancellation, the Plan must provide for the continued monthly PMI premium payments to protect BOA's claim against the Property until the Plan is completed and BOA's mortgage is discharged.

    **B.**     **Debtor**

Mr. Lanois counters that ongoing PMI payments are not required, in light of the purpose and manner in which PMI functions. Hence, he maintains that the Plan should be confirmed based on the modified agreed provisions regarding the amount of BOA's secured claim and the interest rate payable during the Plan term. He asserts that:

---

[4] The Homeowners Protection Act of 1998 is also referred to as the PMI Cancellation Act.

[5] The Federal Reserve Board of Governor's Consumer Compliance Handbook states that this Act "addresses the difficulties homeowners have experienced in canceling private mortgage insurance (PMI) coverage. It establishes provisions for the cancellation and termination of PMI, sets forth disclosure and notification requirements, and requires the return of unearned premiums." Fed. Reserve Bd. of Governors, Homeowners Protection Act, *in* Consumer Compliance Handbook 1, 1 (Nov. 2007) (footnote omitted), *available at* http://www.federalreserve.gov/boarddocs/supmanual/cch/hpa.pdf.

> [T]he purpose of [PMI] (sometimes referred to as mortgage default insurance) is to insure a mortgage holder against loss caused by a borrower's default. Normally, as appears to be the case here, the cost of this insurance is added to the borrower's monthly payment and held in escrow by the lender. If the borrower defaults, the third-party mortgage insurer will pay the lender a certain portion of monies not recouped in the foreclosure process. *See National Consumer Law Center, Mortgage Lending*, § 7.5 (First Edition 2012). Thus, private mortgage insurance generally insures a mortgage holder for losses above and beyond the value of its collateral.

Doc. #49 at 3–4.

Mr. Lanois argues that in the context of a bankruptcy case, however, the value of the Property is not the hypothetical amount that BOA could have obtained on its full claim from the private mortgage insurer in the event of a foreclosure, but rather, in accordance with § 506(a)(1), the fair market value of the Property as of the date of plan confirmation. Because the full amount of BOA's claim exceeds such value, the excess portion of the claim is unsecured. Continued maintenance of PMI under the Plan, he contends, would essentially protect the *unsecured* portion of the claim. Consequently, Mr. Lanois would be required to pay $6,500 more to BOA than he proposes to pay under the Plan. Regarding the PMI payment obligation itself, Mr. Lanois argues that § 1322(b)(2) permits modification of the mortgage terms under the Plan to exclude this payment because the so-called antimodification prohibition of that provision is inapplicable to this multi-family Property.

**IV. Discussion**

Generally, a Chapter 13 plan must ensure that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such [secured] claim is not less than the allowed amount of such [secured] claim." 11 U.S.C. § 1325(a)(5)(B)(ii). "[Section] 506(a) is the controlling provision that allows a court to determine the status of a creditor's secured claim, based on a judicial valuation of the underlying collateral." *In re Dolinak*, 497 B.R.

5

15, 19 (Bankr. D.N.H. 2013) (citing *Nobelman v. American Savings Bank*, 508 U.S. 324, 328–29 (1993)). Section 506(a)(1) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1).

It is clear that "[a]n allowed secured claim cannot exceed the value of the collateral." *Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831, 833 (B.A.P. 1st Cir. 2000); *see also In re Dolinak*, 497 B.R. at 19 ("[I]t is the court's valuation of the collateral and the extent of any senior liens that determines whether the claim of [a junior mortgage holder] is secured or unsecured, regardless of how the proof of claim describes the claim."). Of course, here the parties have agreed that BOA's secured claim based on the current fair market value of the Property is $84,000.00.

Turning to the PMI dispute between the parties, the few courts that have addressed this precise issue have rejected BOA's contention, based upon the language set forth in § 506(a). This Code section mandates that the value of a debtor's property "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C. § 506(a)(1). When the property is to be retained by a debtor under a plan, the value of the property is *not* the hypothetical amount the lender would receive on its mortgage claim through PMI coverage in the event of a borrower's default, but rather, the fair market value of the property itself at the time of confirmation. *See Lomas Mortg. USA v. Fischer (In re Fischer)*, 136 B.R. 819, 825 (D. Alaska 1992) (noting that "[t]he value of the property should be the same whether being analyzed under § 506 or § 361. Therefore, the value of creditor's interest that must

6

be adequately protected [for purposes of § 361] does not include the value of the mortgage insurance."); *In re Lopez*, 75 B.R. 961, 962 (Bankr. E.D. Pa. 1987) (rejecting the contention that the sum which the mortgagee would receive pursuant to mortgage insurance upon foreclosure is the proper valuation of the property under § 506 where the debtor intends to retain the property under a Chapter 13 plan, instead utilizing the property's fair market value), *aff'd sub nom. Lopez v. Beneficial Mut. Sav. Bank*, 82 B.R. 712 (E.D. Pa. 1988).

The United States Court of Appeals for the Ninth Circuit is the only circuit court to rule on this precise issue. In *Lomas Mortg. USA v. Wiese*, 980 F.2d 1279 (9th Cir. 1992), *vacated*, 508 U.S. 958 (1993), that court concluded that when a debtor proposes to retain his residence under a Chapter 13 plan, the hypothetical amount to be gained through PMI coverage is not to be included when calculating the value of the residence to determine the amount of the mortgagee's secured claim to be paid under the plan. *See id.* at 1283 ("[W]e conclude that mortgage insurance should not be included in the valuation. Our conclusion is based in part upon the last sentence in section 506(a) which states 'such value shall be determined in light of the purpose of the valuation and of the *proposed disposition or use of such property* . . . .'").[6] Mr. Lanois is correct then in observing that here BOA "is essentially asking that the value of the secured portion of its allowed claim be enhanced to include the additional value Bank of America would realize if Mr. Lanois is required to continue to pay the cost of the mortgage default insurance." Doc. #49 at 5 (footnote omitted).

---

[6] The Court heard the matter on appeal from the Alaska District Court's decision issued in *Lomas Mortg. USA v. Fischer (In re Fischer)*, 136 B.R. 819 (D. Alaska 1992). The reasoning of the Ninth Circuit that mortgage insurance should not be included in the value of an undersecured creditor's claim for purposes of payment through a Chapter 13 plan is still sound when applied to a debtor's multi-family residence, notwithstanding the vacating of the judgment by the Supreme Court in light of its ruling in *Nobelman v. American Sav. Bank*, 508 U.S. 324 (1993), interpreting § 1322(b)(2) as prohibiting modification of a mortgage secured by a debtor's principal *single-family* residence.

Omitting PMI payments from the amount of BOA's claim is consistent with the provisions of Chapter 13 and, because of the nature of the Property, not in contravention of the antimodification provision of § 1322(b)(2). A debtor may, through a Chapter 13 plan, "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2) (emphasis added). The First Circuit has ruled unequivocally that "the antimodification provision of § 1322(b)(2) does not bar modification of a secured claim on a multi-unit property in which one of the units is the debtor's principal residence and [where] the security interest extends to the other income producing units." *Lomas Mortg., Inc. v. Louis*, 82 F.3d 1, 6 (1st Cir. 1996); *see also Pawtucket Credit Union v. Picchi (In re Picchi)*, 448 B.R. 870 (B.A.P. 1st Cir. 2011) (finding that the First Circuit's holding in *Lomas Mortg., Inc. v. Louis* was not overruled by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*)*; *Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough)*, 461 F.3d 406, 411 (3d Cir. 2006) ("Based on the plain language of § 1322(b)(2), we conclude that a creditor does not receive anti-modification protection for a claim secured by real property that includes both the debtor's principal residence and other rental property that is not the debtor's principal residence.").

Even though a secured creditor's rights may be modified, § 1325(a)(5) requires that:

> The debtor must [still] make payments through the plan, provide that the mortgage creditor will retain its lien, and pay the mortgage creditor the *present value* of its allowed secured claim during the term of the plan, in accordance with § 1325(a)(5). *In re Martin*, 444 B.R. 538, 543–46 (Bankr. M.D.N.C. 2011); *In re Hussain*, 250 B.R. 502, 508 (Bankr. D.N.J. 2000). Nothing more is required under § 1325(a)(5).

*America's Servicing Co. v. Anderson (In re Anderson)*, No. 12-51191-MGD, 2012 WL 2930108, at *1 (Bankr. N.D. Ga. June 15, 2012) (emphasis added).

In short, what Mr. Lanois has proposed in his Plan—deferred payments to BOA calculated upon the agreed fair market value of the Property, with interest at a rate now acceptable to the parties, and retention of its lien until plan completion and issuance of a discharge—satisfies these requirements of § 1325(a)(5) and is all that is required. *Id.*

### Conclusion

The treatment of BOA's secured claim under the Plan is permissible and BOA's objection to the Plan is OVERRULED. The Plan may be confirmed as modified by the agreement of the parties relative to the principal amount of BOA's secured claim and the interest rate payable under the Plan.

The Chapter 13 Trustee shall submit a proposed confirmation order consistent with this Memorandum of Decision and Order within 14 days of the date hereof.

Date: September 10, 2014                                      By the Court,

                                                              *Diane Finkle*
                                                              Diane Finkle
                                                              U.S. Bankruptcy Judge